## Wilson v. Commonwealth.

(Decided January 12, 1923.)

### Appeal from Perry Circuit Court.

Homicide—Evidence.—Evidence examined and held sufficient to sustain verdict and judgment convicting defendant of murdering one who attempted to hold defendant and prevent him from shooting another, although there was no evidence of any previous ill-feeling on the part of defendant toward deceased, as there was ample evidence that defendant shot deceased purposely and maliciously rather than accidentally as he testified.

H. C. FAULKNER for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Upon an indictment charging him with having murdered George Handley, the appellant was tried and convicted and his punishment fixed at confinement in the penitentiary for life.

The sole ground urged for reversal of the judgment is that there was no evidence that the shooting was done maliciously or intentionally, or otherwise than accidentally as is claimed by the defendant.

The facts about which the witnesses substantially agree are: That the defendant, the deceased and one Will Brown were walking along near each other in the crowd that was returning from a baseball game; that defendant and Brown became engaged in an argument as to which of the two rival pitchers was the better pitcher; that both became angry; that Brown picked up a couple of rocks and defendant attempted to draw his pistol which he was carrying inside his shirt; that deceased, acting as peacemaker, threw his arms around defendant and prevented him from drawing his pistol, at the same time telling Brown to put down his rocks, which the latter did and had gotten some distance away when the pistol went off and shot deceased, from which he died almost immediately.

The witnesses do not agree as to whether Brown picked up the rocks before or after defendant attempted to draw his pistol, and it is impossible to tell from the record just where under his shirt defendant's pistol was, or just how it happened to be discharged; but the witnesses agree that after deceased grabbed defendant around his arms and body that the latter was struggling to get loose, with his right hand under his shirt and presumably on the pistol, and after Brown had thrown down his rocks and left, the pistol was discharged and the bullet entered deceased's body just below the left nipple.

Defendant insists that he had nothing against the deceased, had no desire whatever to do him any harm, and that the shooting was purely accidental. One of the witnesses for the Commonwealth, however, testified that while defendant was attempting to get loose from deceased he succeeded in pulling the pistol out from under his shirt and pointing it at the deceased, fired it, and as slightly corroborative of this evidence is the testimony of several of the witnesses that there was no hole made by the bullet in defendant's shirt, and that same was powder-burned only on the outside.

Obviously, if this evidence is true, the shooting was not accidental, and defendant was guilty of murder as the jury found.

All of the evidence shows that defendant was struggling to get loose and that deceased was struggling to hold him and prevent him from pulling his pistol, even after Brown had entirely abandoned the difficulty, and it is at least a fair inference from the evidence that the

defendant, although he previously had no feeling against the deceased, became angry at him when he took hold of him and refused to let him go, and for this reason purposely shot him.

Certainly, upon all of the evidence, it was a question for the jury to decide whether or not the shooting was done maliciously, in sudden heat and passion, or accidentally, and upon all of these questions, as well as upon the question of self-defense, the court instructed the jury, and there is no error pointed out or suggested in any of the instructions. The only criticism thereof is that there was no evidence to sustain the instruction upon murder, and that it should not have been given, but in this as we have seen there is no merit.

A dying declaration of deceased was introduced by the defendant, in which he stated that he did not know whether defendant shot him purposely or not, and that when asked how defendant shot him, he said, "Between his legs," but this latter part of his statement is at variance with the testimony of all the other witnesses in the case, including that of the defendant himself, and it is clear that the deceased not only did not know whether defendant shot him purposely or not, but did not know just how it was done.

By the decided weight of the testimony, deceased, at the time he was shot, was on defendant's left with his left arm around the front of defendant, his right arm around defendant's back, and the upper portion of defendant's right arm held firmly against his right side, but with his right hand in his shirt on his pistol. That the pistol may have been discharged accidentally is of course possible, but that it may have been fired purposely is, it seems to us, the more reasonable inference from all of the facts, and we certainly cannot say that the verdict is not supported by the evidence or flagrantly against it.

Judgment affirmed.